# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS.

---

## VAUGHAN v. STATE.

### Opinion delivered December 3, 1892.

1. *Bill of exceptions—Affidavits of bystanders.*

   It is only where the circuit judge refuses to certify the truth relating to matters which occurred in court in his presence at the trial of a cause that a party can resort to the statutory method of a certificate of bystanders, supported by affidavits.

2. *Jury—Exposure to improper influences.*

   In a criminal case the affidavit of a witness that, after submission of the case, the jurors were exposed to certain improper influences, makes a *prima facie* case which casts upon the prosecution the burden of showing that the jurors had not been so exposed, or that the exposure was of a character that did not influence them.

3. *Circuit court—Adjourned session.*

   The circuit court may provide for a special adjourned term to be held after the time for holding the next regular term in another county of the circuit, and an order of adjournment to a given day, made by the court, is a sufficient entry upon the record of an order for such adjourned session.

4. *Accessory—Principal's confession.*

   Confessions of the principal are inadmissible in a prosecution of an accessory, at least where the principal can be called as a witness to the fact.

5. *Accomplice—Promise of leniency.*

   The fact that an accomplice was induced to testify by an offer of leniency of punishment does not affect his competency, but only his credibility.

6.  *Instruction—Circumstantial evidence.*

   Where the prosecution relies upon the evidence of an accomplice,
      as well as upon circumstantial evidence, to establish defend-
      ant's guilt, it is not error to refuse an instruction which
      assumes that the prosecution relies upon circumstantial evi-
      dence only.

APPEAL from Washington Circuit Court.

EDWARD S. McDANIEL, Judge.

Samuel F. Vaughan was indicted in the Madison circuit court as accessory before the fact to the murder of W. A. Gage, alleged to have been committed by Thomas Hamilton.   On March 17th, 1892, the cause was set for trial on April 18th, 1892, and on March 18th the court adjourned until April 18th.   On the day set for trial defendant objected to any proceedings being taken or order made in the cause, for the reason that the circuit court of Madison county began on the first Monday in March, 1892, and by the laws of the State of Arkansas was entitled to two weeks, at the end of which time the circuit court of Benton county on the third Monday in March, the 21st day of that month, commenced, and was entitled to the whole of the time until the 25th of April, when the Washington circuit court was entitled by law to commence ; that the circuit court of Benton county had not finally adjourned, and that the day on which the case was called and the other days of that week were a part of the time belonging to the circuit court of Benton county, and that there was still unfinished business pending and undisposed of in that court, and that the circuit court of Benton county had adjourned over until the 30th day of May, 1892, to try and dispose of such unfinished business.   All of which facts were admitted by the State and by the court stated to exist.   The court overruled the objections and ordered the cause to progress. Thereupon, on defendant's application, a change of venue was taken to Washington circuit court.

H. F. Berry testified that, on the day after the killing, he went to Gage's house and saw tracks leading to and from the place of the killing. He says: "Hamilton was arrested and brought over to Gage's. I saw shoe tracks in the orchard east of the house. The tracks were made with a shoe that had heel irons on it. Saw tracks in the lane and where the killing was done. The tracks leading off from the scene of the killing were of a person in sock feet. We followed the tracks for about one-half mile. The shoe tracks fit Hamilton's shoes. Hamilton was with us at the time of the tracking. Hamilton's foot was set in the track. His foot fit the track. There was red dirt on Hamilton's socks and beggar's lice on his socks, corresponding to the red dirt and beggar's lice in Gage's field. Hamilton showed us where he got over the fence and where he stood at the time of the shooting."

Hamilton testified that he killed deceased; that defendant promised him a certain sum of money if he would kill him, and procured for him the gun with which the killing was done. He testified that no inducements were offered him to testify in the cause; that he left it to his attorneys to do the best they could for him, and they told him they had agreed for him to testify. Hamilton's attorneys testified that the whole matter was left to them to do the best they could for Hamilton, and that they made an agreement with the prosecuting attorney that Hamilton should testify, provided he would be permitted to plead guilty to murder in the second degree.

The court instructed the jury as follows:

"You are instructed that the witness, Thomas Hamilton, is an accomplice, and that a conviction of the defendant cannot be had upon his testimony unless corroborated by other evidence tending to connect the defendant, Vaughan, with the commission of the offense of the murder of Gage set forth in the indictment, and the cor-

roboration is not sufficient if it merely shows that the offence was committed, and the circumstances thereof; and if such corroboration does not appear in the testimony, you should acquit.  But if you find from the evidence that the testimony of witness, Thomas Hamilton, has been corroborated by the evidence as above indicated, and if such corroboration, considered in connection with said Thomas Hamilton's testimony and all other facts. and circumstances in proof in this cause, satisfies·your minds of the guilt of the defendant beyond a reasonable doubt, you should convict."

Defendant excepted generally to the giving of the above instruction.

The court refused a request of the defendant to. charge the jury as follows :  " To authorize a conviction on circumstantial evidence alone, it is not enough that all the circumstances proved may be consistent with and point to the guilt of the defendant, but to authorize a conviction the circumstances must not only be in harmony with the guilt of the accused, but they must be of such a character that they cannot reasonably be true in the ordinary nature of things and the defendant be innocent."

The jury returned a verdict of guilty of murder in the first degree.  A motion for a new trial, the grounds. of which are stated in the opinion, was filed and over-ruled.  Defendant has appealed.

*J. D. Walker* for appellant.

1.   The special session of the Madison circuit court interfered with the business of the Benton circuit court, and was therefore held contrary to law.  Mansf. Dig. secs. 1373, 1476–7, 1481 ; 32 Ark. 278.

2.   The testimony of Berry that "Hamilton showed us where he got over the fence and where he stood at the time of the shooting" was inadmissible.

3. It was error to instruct the jury "that Hamilton *is an accomplice.*"

4. The court erred in refusing the instructions asked as to circumstantial evidence. 14 Gray (Mass.), 55.

5. Hamilton was incompetent to testify; there being an agreement or arrangement by which he was to be allowed to plead guilty of murder in the second degree. 13 S. W. Rep. 838.

6. There was undue influence used upon the jury.

*W. E. Atkinson*, Attorney General, and *Charles T. Coleman* for appellee.

1. The adjourned session of the Madison circuit court was legally held. Mansf. Dig. sec. 1476 ; 32 Ark. 278 ; 39 *id.* 448 ; 21 N. E. Rep. 751.

2. The statement of Berry was admissible. Defendant was indicted as accessory before the fact, and the guilt of Hamilton was a material fact to be established by the prosecution, and must be proved by competent testimony. 33 N. H. 224 ; Whart. Cr. Ev. sec. 702 ; 37 Ark. 83.

3. There was no interference with the province of the jury, if the whole charge of the court is considered. 52 Ark. 180.

4. Hamilton was a competent witness, and his evidence subject to the same rules and tests as that of other witnesses. 25 Ark. 96 ; Cr. Code, sec. 240 ; 1 Roscoe, Cr. Ev. 201 n.; 80 Ky. 349 ; 81 *id.* 250.

5. The instructions as to circumstantial evidence properly refused. 15 S. W. Rep. 411, 823 ; 49 Cal. 577 ; 67 Ga. 570.

6. The agreement that Hamilton would be allowed to plead guilty of murder in the second degree did not render him incompetent. 1 Hale (P. C.), 304, 305 ; 12 How. St. Tr. 1454 ; 1 Gr. Ev. (14th ed.), sec. 379 ; 1 Bish. Cr. Pr. sec. 1161 ; 28 Ark. 123. An inducement

to testify by an offer of immunity only goes to the credibility of the witness. 44 Fed. Rep. 921; 1 Gr. Ev. (14 ed.), sec. 380; 1 Roscoe, Cr. Ev. 200; 59 Wis. 471; 11 Neb. 1.

7. It is not alleged that the undue influence was from any misconduct in the jury or in the officer having charge of the jury, and it was incumbent on the party complaining to show that the jury were in fact influenced to his prejudice.

8. The applause is not shown to have influenced the jury to defendant's prejudice. 29 Tex. App. 309; 15 S. E. Rep. 748; 46 Alb. L. J. 342; 78 N. C. 564; 64 Iowa, 721. The fact that the audience applauded remarks of the prosecuting attorney, when the applause was promptly repressed and rebuked by the court, is not ground for reversal where it is not shown that the jury were influenced prejudicially to the defendant. 29 Tex. App. 309.

COCKRILL, C. J. The appellant was indicted as accessory before the fact to murder in the first degree. He was convicted and sentenced to be hung. His motion for a new trial assigns numerous grounds for the reversal of the judgment.

1. One of the grounds assigned for new trial and argued here is that the judgment should be reversed because of improper influence brought to bear upon the jury to obtain a verdict. It is said that the evidence of this influence is reached from two distinct sources : first, that it is found in a certificate of the executive and ministerial officers of the court, which is embodied in the bill of exceptions, showing that when the final argument of the State's attorney in prosecuting the case against the appellant was concluded, it was followed by "loud, general and continuous applause for some moments by the citizens of Washington and Madison counties," who filled the court house to its full capacity

at the trial; and second, that it is found in the affidavit of J. W. Walker, which was considered by the court upon the application for a new trial. This affidavit is to the effect that the cause was submitted to the jury on Saturday, and that they brought in no verdict on that day; that on Sunday they were given the liberty of the court room, the doors and windows of which stood open; that some of the jurors left the court room and remained some upon the north and some upon the south porch of the court house; that divers citizens of Washington and Madison counties were in the court house yard, within fifteen or eighteen feet of the jurors, excitedly discussing the merits of the case against the appellant; that the affiant, who was one of the attorneys for the appellant, sought the trial judge, and reported these facts to him, but that thereafter "the crowd remained within fifteen or eighteen feet of the jurors who were trying the case, excitedly discussing the case and insisting upon the guilt of the defendant, Vaughan; and that this was kept up for hours after the affiant called the attention of the court to the facts."

Of the certificate of the officers, it is sufficient to say that it is the province of the trial judge, and not of the executive and ministerial officers of the court, to certify to this court the facts in reference to matters which occur in court in the presence of the judge on the trial of a cause. It is only where the judge refuses to certify in the bill of exceptions the facts complained of that a party can resort to the statutory method of a certificate of bystanders, supported by affidavits. *Fordyce* v. *Jackson*, 56 Ark. 594.

1. Affidavits of bystanders.

The judge did not refuse to certify any fact or exception in this case. The certificate of bystanders is therefore extra-judicial, and cannot be considered by us.

The affidavit of Walker directs attention to matters which did not occur in court in the course of the trial.

2. Exposure of jury to improper influences.

The judge himself could obtain information about them only through the testimony of others. Affidavits are admissible for that purpose, and, when considered by the trial court and brought upon the record by bill of exceptions, questions presented by them are brought before us on appeal. That is familiar practice.

If the jury were really subjected for hours to the influence of an excited crowd of men who discussed the merits of the controversy and demanded the guilt of the prisoner in their hearing, the integrity and purity of the trial would of course be impeached, and a new trial, freed from all bias and undue influence, would be the least reparation that the law could make in behalf of justice.

The only doubt that arises on this branch of the cause is whether there is not some mistake, omission or defect in the record ; for we know that the judge who tried the cause is careful, conscientious and capable. Facts and circumstances which do not appear of record, and which made the matter clear to his mind, were perhaps known to him; but there is no intimation of them in the record, and we can try the cause only upon the record as it exists. By the well established practice, acted upon in this court in many cases, the unimpeached affidavit made a *prima facie* case that some or all the jurors had been exposed to improper influence, and it cast upon the prosecution the burden of showing that the jury had not been so exposed, or that the exposure was of a character that could not or did not influence them. The officer in charge of the jury, persons about the court house on the day in question, and the jurors themselves were all competent witnesses to disprove the statements of the affidavit if they were inaccurate or untrue. When the means of contradiction were so easily to be obtained, we must infer that the statements of the affidavit are true, else the proof to the contrary would be

forthcoming. To presume that the judge knew other facts than those set out in the record would be contrary to the authorities and the practice in such cases, and would establish a precedent that would lead to dangerous results.

The judgment convicting Maclin of murder in the first degree was reversed upon the unimpeached and uncontradicted affidavit of one person to the effect that one of the jurors had remained for some time in the hearing of comments on the case made by bystanders. *Maclin* v. *State*, 44 Ark. 115. Judge Smith, in delivering the opinion, said: "Here no effort was made to deny, exculpate or explain the misconduct of this juror, or to show that it was not hurtful to the appellant, although it was in the power of the State to produce him and the officer under whose eye he was." He goes on to say that consequently it must be taken as an uncontroverted fact that the juror was subjected to improper. influence, and that that fact vitiated the verdict. Other cases of like import could be cited, but the question is at rest in this State. The practice rests upon no technical ground, for it is of the first importance that no verdict should stand in the face of facts calculated to throw doubt and suspicion upon the fairness of the trial. As was said by Judge Fairchild in *Love* v. *State*, 22 Ark. 336 : "The safeguard of the law must be well protected, that the just punishment of the guilty may not be a precedent or excuse for the illegal conviction of the innocent." A new trial ought, therefore, to have been granted.

It is important to consider further such questions only as may arise on another trial.

2. The special term of the Madison circuit court was legally held. Section 1476 of Mansfield's Digest provides : "Special adjourned sessions of any court may be held in continuation of the regular term, upon its

3. Adjourned session of court.

being so ordered by the court or judge in term time, and entered by the clerk on the record of the court;" and section 1481 provides : "No such adjourned session or special term shall interfere with any other court to be held by the same judge."

In construing these sections it has been decided that the circuit court may provide for a special adjourned term to be held after the time for holding the next regular term in another county of the circuit; and that an adjourning the court to a given day is a sufficient entry upon the record of an order for an adjourned session. *Galbreath* v. *Mitchell*, 32 Ark. 278; *Davies* v. *State*, 39 *id*. 448.

As to whether the special session will in any instance interfere with the business of a regular term of the court in another county, is a question which must be left to the sound discretion of the trial judge.   There is certainly no abuse of it shown in this case.

The change of venue was regularly taken to the Washington circuit court, and that court has jurisdiction of the cause.

4. Confession of principal not admissible against accessory.

3.   The witness, Berry, was permitted to make the following statement : "Hamilton showed us where he got over the fence and where he stood at the time of the shooting."   Hamilton was charged as principal and the appellant as accessory before the fact.   The appellant could be tried without regard to Hamilton's conviction. Mansf. Dig. sec. 1511.   But to prove the appellant's guilt, it is necessary to prove Hamilton's.   In general, any evidence tending to prove the guilt of the principal is admissible to prove that fact on the trial of one charged as accessory.   2 Bish. Cr. Pr. sec. 13.

Confessions of the principal seem to be an exception to the rule, at least where the principal can be called as a witness to the fact.   2 Bish. Cr. Pr. sec. 13; 1 Rus-

sell, Crimes, 43 ; 1 Roscoes' Cr. Ev. 53 ; *Regina* v. *Hansill*, 3 Cox, Cr. Cas. 597.

Hamilton was called as a witness in this case, and testified fully to his own guilt. The statement made to the witness Berry, set out above, was an indirect confession. It was made after the event, and not at a time so near it as to be regarded as of the *res gestae*. It was, according to the authorities, only hearsay as against Vaughan, the accessory. In *Casey* v. *State*, 37 Ark. 67, the principal in the crime of murder, who testified on the trial of one charged as accessory, was permitted to state on his examination in chief that he had previously made a confession of his guilt and at the same time accused the defendant. No reason is assigned in the opinion for the admission of the evidence of either of the previous statements made by the witness. And it seems that the court placed the admission of both on the same ground, whatever that may be. The decision cannot, therefore, be regarded as authority to the point that the previous confessions of the principal are competent against the accessory. If the statement made to Berry led him or others to the discovery of tracks which identified Hamilton as the person who committed the crime, or to the discovery of any independent fact having that tendency, it was competent evidence to show that such discovery was made conformably to the information given by Hamilton. It is not clear from the testimony of Berry whether that was or was not the inducement which led to the discovery of the tracks which were identified as Hamilton's. It will be easy enough to preserve the rule on a new trial.

4. Hamilton was a competent witness. The proof relied upon to exclude his testimony tends only to show that he was induced to testify by an offer of leniency of punishment. The fact could affect his credibility only.

5. Confession not vitiated by promise of leniency.

1 Roscoe's Cr. Ev. 132; *Rex* v. *Tong*, Kelyng's Rep. 18; *Black* v. *State*, 59 Wis. 471.

5. The appellant has failed to point out any error in the charge of the court.

The criticism that it assumes the appellant's guilt, and is misleading as to the tests to be applied to Hamilton's testimony, is not well founded when other parts of the charge are looked to, and it is obvious that the appellant had only to direct the trial court's attention to these matters to have even the semblance of error removed.

6. Instruction touching circumstantial evidence.

6. The only other matter worthy of mention is the court's refusal to give a somewhat extended charge to the jury based on the hypothesis that the cause went to the jury on circumstantial evidence only. The theory is that there was no direct testimony, aside from Hamilton's, to connect the appellant with the commission of the offense; that Hamilton was impeached; that it was the jury's province to disregard his testimony, and that, laying it aside, the case rested purely upon circumstantial evidence. But the theory of the prosecution was based upon Hamilton's testimony. There is nothing to indicate that, without it, a conviction was asked. It was proper, therefore, for the court to refuse to confound the jury by submitting a charge upon an issue they were not to try. If the theory of the prosecution had been that the appellant's guilt was shown by circumstantial evidence wholly independent of Hamilton's testimony, and Hamilton had been impeached, a proper charge upon circumstantial evidence would have been appropriate. But whether a refusal to give it would be reversible error, even in that case, would depend upon the question whether the charge upon reasonable doubt and otherwise was fairly adequate to meet the contingencies of the evidence.

Reverse the judgment and remand the cause for a new trial.