## WILL McDONALD *v.* STATE OF ARKANSAS

5542                                         459 S. W. 2d 806

### Opinion delivered November 23, 1970

*James H. Pilkinton,* for appellant.

*Joe Purcell,* Attorney General; *Mac Glover,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant was convicted of uttering a forged check and was sentenced to imprisonment for five years and a day.

Most of the points argued in the brief by the appellant's present court-appointed counsel, who did not try the case, are not properly before us, because they were not raised until their inclusion in the motion for a new trial. "Before an alleged error in a felony case of a degree less than capital may be considered by this court, there must be an objection calling for a ruling by the trial court, an exception to an adverse ruling, the matter brought into the record by bill of exceptions and carried forward into a motion for new trial." *Bivens* v. *State*, 242 Ark. 362, 413 S. W. 2d 653 (1967). An assignment of error first raised in the motion for a new trial comes too late for this court to consider it. *Tiner* v. *State*, 239 Ark. 819, 394 S. W. 2d 608 (1965).

The evidence was amply sufficient to support the verdict. The appellant was identified as the person who cashed a check for $35.00, purportedly drawn by Ernest May, at a service station in Hope. May testified that the signature on the check was a forgery; in fact, his first name was erroneously written on the check as "Earnest." There was also testimony that the appellant had an opportunity to obtain one of May's blank checks, which were printed with his name and address on them. McDonald, the accused, took the witness stand and denied his guilt, but the jury's verdict has settled the issue of fact raised by the conflicting testimony.

Mary Rankin, who was with McDonald when he cashed the check, testified for the State and admitted on cross examination that she too had been arrested and had been told by an officer that "they" would make it easy on her if she testified for the prosecution. Such an inducement, however, does not affect the competency of her testimony, for we have held that it goes only to the witness's credibility. *Vaughan* v. *State*, 57 Ark. 1, 20 S. W. 588 (1892).

Albert Graves, Jr., an attorney at Hope, was appointed by the court to represent McDonald at the trial. Mr. Graves practices law in a firm composed of himself, his brother, John Robert Graves, and his father, Albert

Graves, Sr. John Robert Graves is a deputy prosecuting attorney and as such signed the information charging McDonald with forgery and uttering. John Robert Graves was present at the trial, but the record indicates that he took no active part in the proceedings, which were conducted by the prosecuting attorney himself.

It is now insisted that the court's action in appointing as defense counsel the brother and law partner of the deputy prosecuting attorney was so contrary to justice as to amount to a denial of due process of law. According to the record, there are eight practicing attorneys in the county. In assigning counsel for indigent defendants the circuit judge rotates the appointments among those lawyers. In that way it happened that Albert Graves, Jr., was named as counsel to defend this appellant.

We agree that Mr. Graves should not have been appointed to defend the case. It is settled, of course, that a lawyer cannot properly represent two clients having conflicting interests. Code of Professional Responsibility, EC 5-14 (1969). In such a situation the attorney's partners and associates are subject to the same disability. *Ibid.*, DR 5-105 (D).

It does not follow, however, that the trial was so devoid of fairness as to constitute a denial of due process. As we have said, John Robert Graves did not actively try the case for the State. Our study of the record discloses no error or omission on the part of Albert Graves, Jr., in his handling of the defense. To the contrary, he obtained a verdict of not guilty on the companion charge of forgery. On the whole, we are convinced that the appellant received a fair trial in every respect, conducted according to law.

In much the same vein it is contended that the entire system of appointing counsel for indigent defendants involves a denial of due process, remediable only by the State's furnishing a public defender in every instance. We find no sound basis for that contention. Quite the opposite, even the most recent studies approve the system of

appointed counsel. That method was embodied in the Model Defense of Needy Persons Act, § 9, approved by the National Conference of Commissioners on Uniform State Laws in 1966. It is also included in the American Bar Association's Minimum Standards For Criminal Justice. See Standards Relating to Providing Defense Services, § 1.2 (Tentative Draft, 1967). Thus, according to what may fairly be regarded as the most enlightened points of view, there is still a place for the appointment of defense counsel—especially, as here, in comparatively small counties.

No error appearing, the judgment must be affirmed.