STATE of Iowa, Appellee,

v.

Burton Allen DeWITT, Appellant.

No. 62890.

Supreme Court of Iowa.

Dec. 19, 1979.

J. W. Conway of Gillett, Conway & Allison, Muscatine, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and Jay T. Schweitzer, Louisa County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK, and McGIVERIN, JJ.

REYNOLDSON, Chief Justice.

A jury found defendant guilty of burglary, a violation of section 708.1, The Code 1977, and larceny in the nighttime, a violation of section 709.4, The Code 1977. Trial court sentenced him to serve concurrently twenty years' imprisonment on the burglary count and ten years' imprisonment on the larceny count. Defendant appeals, contending two accomplices called as witnesses by the State provided tainted testimony under coercive requirements of the trial judge who took their guilty pleas and sentenced them on charges arising out of the same incident. He asserts this testimony was erroneously admitted. We affirm the district court judgment.

Certain facts are uncontested. On the night of December 30, 1977, there was a break-in at Dean Solomon's home in Columbus Junction. Furs and guns were stolen from an adjoining garage. The next morning Randy Morrison, Ricky Kindred, and defendant were arrested while attempting to sell the furs to a Burlington fur dealer. Defendant's car had been used to haul the furs to Burlington. Two of Solomon's stolen guns were found in this vehicle.

The County Attorney's Information initially filed charged all of the above persons with the two counts upon which defendant was ultimately convicted. However, on April 7, 1978, before defendant's trial, Kindred and Morrison, pursuant to plea bargains, pled guilty to single charges of larceny in the nighttime and receiving stolen goods, respectively. The prosecution additionally agreed to recommend probation for Kindred and a deferred sentence for Morrison. Apparently the county attorney also promised Kindred and Morrison immunity from any further prosecutions arising out of the above incident, and obtained an implementing court order. No issue is raised here relating to the procedure by which immunity was granted,[1] nor do we pass on defendant's standing to raise such an issue.

April 11, 1978, defendant was served with additional minutes of testimony showing that Kindred and Morrison would testify to his involvement in the Solomon break-in.

April 26, 1978, defendant's counsel deposed Kindred and Morrison in his law offices. They unsuccessfully tried to call their lawyer before being questioned. With knowledge of their immunity, both then testified that defendant was not involved in the December 30–31 activities other than hauling them and the furs to Burlington.

May 26, 1978, Kindred and Morrison appeared in district court for sentencing. The court indicated it was aware of their April 26 depositions, as well as the sheriff's minute of testimony that this defendant while in custody told him he couldn't recognize

the Solomon residence "in the daylight," and a deputy's minute of testimony that Morrison had told him he regretted accompanying defendant and Kindred in their criminal activities on the night of December 30. A copy of these additional minutes of testimony was in the court file.

In considering Kindred's sentence trial court said:

I am having the same problems in connection with this matter that I have had in connection with the other man [Morrison]. I call your attention to [Sheriff] Havenhill's testimony—admittedly—he is not under oath, admittedly he is not before the court where he might be cross-examined, but he indicated that in a conversation with Mr. DeWitt, Mr. DeWitt admitted to him he did not recognize the Dean Solomon residence by daylight. Now, if that comment has any significance at all, it means that these two gentlemen who are in court today, have not disclosed what they know about it— Mr. DeWitt's participation in this offense

. . . .

. . . What I propose to do is simply to continue imposition of sentence, I am going to do that for two reasons. I am going to find out whether these gentlemen want me to sentence them, knowing that I do not believe them, or whether they want to withdraw their pleas of guilty and stand trial. I don't know how much it would take, but I simply am unable in fairness to them and in fairness to me, to sentence them the way I feel at the present time.

I want them both to understand exactly how I feel about their indications that the other gentleman was not involved in this matter . . . .. If they want consideration from this court in connection with their present application, it is going to be absolutely imperative that they erase from my mind the doubts I have raised this morning, and perhaps, [County

1. *See* §§ 782.9–782.11, The Code 1977; Iowa R.Crim.P. 19; *State v. Paulsen,* 265 N.W.2d 581, 587–88 (Iowa 1978); *State v. O'Kelly,* 211

N.W.2d 589, 595–96 (Iowa 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974).

Attorney] Schweitzer, it might not be a bad idea if you would get a complete statement from these two peace officers . . . so that I would know exactly what it . . . was Mr. DeWitt told them about not recognizing the Solomon house in the daylight. I would like to know exactly what it was Mr. Morrison told [Deputy Sheriff] Fidler with regard to having regret for having accompanied the other two defendants on the prior evening.

I would further say to all of you, in the event they are unable to erase the doubts I have in my mind about that particular situation, I would offer them an opportunity to withdraw their pleas and at their request in view of what I have said here today, I would get another judge to try their cases.

That the court would have provided another option, which could have been determined by their counsel, was obvious from the court's subsequent statement at their sentencing:

I didn't believe you then and I am not sure if I were to ask you a direct question, if I would believe you today, and I said as much the last time, and because I said that on the record I suppose I had an obligation to find some other judge to sentence you who could do it objectively.

June 28, 1978, the prosecution deposed Kindred and Morrison. They furnished convincing detail concerning defendant's part in the Solomon break-in and another break-in on the same night.

June 30, 1978, Kindred and Morrison again appeared in court in the continued sentencing proceeding. Their attorney pointed out to the court that his clients had given new depositions and that Kindred had given statements to the county attorney concerning his involvement in this matter and the events or circumstances surrounding these events, and those statements have satisfied the county attorney that Mr. Kindred has told him all he knows concerning the matter. I believe one of the primary concerns of the court in connection with this matter initially

was Mr. Kindred's position—hiding facts concerning the involvement of a third person other than Mr. Morrison.

The county attorney agreed that Kindred on deposition had been "very frank" and opined he "was trying to make a new start." Although the court expressed some reluctance in implementing the plea bargain, he sentenced Kindred, who previously had been convicted of a felony, to serve not exceeding ten years in the penitentiary and placed him on probation. One condition of the probation was:

[T]hat if your testimony is requested in any other future trial, that you appear willingly, without the necessity of a subpoena, that you testify fully about your knowledge of all of the facts in connection with any future trial, and that you do so truthfully, and any deviation or departure from those conditions will result in a hearing, which may very well be followed by a revocation of this probation and you will serve the time in the penitentiary which I have imposed this morning.

Morrison was given a deferred sentence on the receiving stolen goods charge, pursuant to the plea agreement.

Defendant's trial commenced September 27, 1978. The State called Kindred as a witness. When the county attorney sought permission to lead the witness pursuant to section 624.1, The Code 1977 ("A party may interrogate any unwilling or hostile witness by leading questions."), trial court granted defense counsel the right to voir dire examination before it ruled.

Defendant then elicited from Kindred, in the jury's presence, that he was to receive a suspended sentence; he gave a deposition in defense counsel's office; sentence then was delayed because the court "didn't believe that Burton [this defendant] wasn't involved"; he gave a subsequent deposition testifying defendant was involved; he thereafter was granted immunity for any perjury committed on the first deposition; and he was then granted a suspended sentence on the condition he "would be here today." Defendant then unsuccessfully

moved "to exclude any testimony that this man gives for the reason that it's incompetent." At defendant's request the court then recessed to chambers. Defense counsel additionally moved "that any further testimony be excluded for the reason that it's so tainted with threat of a prison sentence that it's absolutely incompetent . . . for the further reason . . . the defendant['s] constitutional rights have been violated, the fourth and sixth, and he's been deprived due process, equal protection . . . ." Trial court ruled the evidence "doesn't go to the admissibility of the testimony . . . it goes to the weight . . . ."

Kindred thereafter testified to defendant's part in the break-in and theft. Under examination by the county attorney he admitted he lied on the first deposition after he and Morrison had decided to take the "rap" for defendant, whom the record later disclosed had been convicted of four prior felonies.

When Morrison was called as a State's witness he testified without objection to defendant's participation in the December 30 offenses. Upon cross-examination defendant elicited substantially the same information Kindred had furnished relating to the plea bargain, the two depositions, and the court's disbelief of their first version of the night's events. After Morrison testified, defendant moved to "exclude testimony" of both Morrison and Kindred for the reasons it was "both involuntary and incompetent and under duress," and that defendant's constitutional due process and equal protection rights were violated. Resisting, the county attorney contended the motion was too late and should have been made before the witnesses testified. Trial court overruled the motion, and overruled defendant's subsequent motion for mistrial.

Appealing, defendant contends (1) his right to an impartial jury trial was violated "by admission of accomplice testimony tainted by the known opinion" of the accomplices' sentencing judge, and (2) his due process rights were denied "when grants of immunity and reduced punishment were given to purported accomplices for their specific testimony against the defendant."

I. Reduced to its essence, defendant seems to argue that trial court committed error by admitting the alleged accomplices' testimony that their sentencing judge did not believe their prior statements denying defendant's participation in the Solomon break-in. He relies on *State v. Larmond,* 244 N.W.2d 233, 236 (Iowa 1976), where we said, "[J]urors are particularly sensitive to a judge's views, and the revelation of his feelings toward . . . witnesses might influence the jury more than the evidence." Of course, in *Larmond* we were examining conduct of the trial judge, not the reported conduct of a different judge in an unrelated proceeding.

But more relevant, the State urges defendant is in no position to complain because in his examination of Kindred and Morrison he sought and obtained the very testimony he now asserts prejudiced the jury against his client. The State relies on the following principle articulated in *State v. Hinkle,* 229 N.W.2d 744, 750 (Iowa 1975), and approvingly quoted in *State v. Washington,* 257 N.W.2d 890, 893 (Iowa 1977), *cert. denied,* 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978):

> [A] party to a criminal proceeding will not be permitted to complain of error with respect to the admission or exclusion of evidence where . . . he himself has acquiesced in, committed, or invited the error.

Passing a serious threshold preservation of error issue, we agree with the State on this subsumed issue. We proceed to the more grave and difficult question whether any testimony of these witnesses should have been admitted.

II. The general rules applicable to these situations are well established; the difficulty is in applying those rules to the unique circumstances disclosed by this record.

A promise of immunity, lenient treatment, prosecutorial abstinence, or favor ordinarily is viewed merely as removing a possible barrier to a willing response to

the testimonial call of the witness. The promise goes only to the credibility of the promisee, not to the admissibility or competency of the testimony. *State v. Houston,* 206 N.W.2d 687, 690 (Iowa 1973); *see Giglio v. United States,* 405 U.S. 150, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 109 (1972); *McDonald v. State,* 249 Ark. 506, 507, 459 S.W.2d 806, 807 (1970); *Evans v. State,* 222 Ga. 392, 403, 150 S.E.2d 240, 248, *cert. denied,* 385 U.S. 953, 87 S.Ct. 336, 17 L.Ed.2d 231 (1966); *People v. West,* 54 Ill.App.3d 903, 906, 370 N.E.2d 265, 269, 12 Ill.Dec. 642, 646 (1977); *Coleman v. State,* 264 Ind. 64, 67, 339 N.E.2d 51, 54 (1975); *State v. McGlynn,* 292 Minn. 405, 409, 195 N.W.2d 583, 585 (1972); *State v. Woods,* 346 Mo. 538, 546, 142 S.W.2d 87, 90 (1940); *State v. Crepeault,* 126 Vt. 338, 340, 229 A.2d 245, 246 (1967), *cert. denied,* 389 U.S. 915, 88 S.Ct. 249, 19 L.Ed.2d 267, *appeal dismissed,* 390 U.S. 38, 88 S.Ct. 833, 19 L.Ed.2d 813 (1968); 21 Am.Jur.2d *Criminal Law* §§ 152–53 (1965); 23 C.J.S. *Criminal Law* § 805 (1961).

■ It is equally apparent that where the prosecutor or the sentencing judge, in combination or singly, bargains with an accomplice for false or specific testimony or a specific result, the accomplice's subsequent testimony is tainted and inadmissible. *People v. Medina,* 41 Cal.App.3d 438, 455–56, 116 Cal.Rptr. 133, 141–43 (1974) (immunity on the condition that witness "not materially or substantially change her testimony from her tape-recorded statement already given to the law enforcement officers on May 10, 1972"); *People v. Green,* 102 Cal. App.2d 831, 833–36, 228 P.2d 867, 868–72 (1951) (count to be dismissed in exchange for accomplice's testimony at a preliminary hearing if defendant "is held to answer"); *Franklin v. State,* ⸺ Nev. ⸺, ⸺, 577 P.2d 860, 863 (1978) ("By bargaining for specific testimony to implicate a defendant, and withholding the benefits of the bargain until after the witness has performed, the prosecution becomes committed to a theory quite possibly inconsistent with the truth and the search for the truth."); *Rex v. Robinson,* 70 D.L.R. 755, 761 (1921) (accomplice witness warned by judge that if his testimony "was not the same as he had already told the police he would be executed").

Decisions similar to those just cited—rejecting bargained-for testimony of accomplices—are rare. As these are the authorities upon which defendant mainly relies, we examine them briefly. Unlike the case before us, the bargain in *Green* required the accomplice's testimony to produce a definitive result. The effect of the bargain in *Medina* was to require the accomplice's testimony to follow a script. *Franklin* was a three-to-two decision of the Nevada court. The accomplice allegedly was hired by defendant to kill her husband. Under threat of a death penalty, he agreed to testify against the defendant and after her conviction was permitted to plead guilty to second-degree murder. The opinion does not make clear the "specific testimony" involved in the situation, but it is unique in the implication the prosecution must perform its part of the bargain before the accomplice testifies. Even in *Robinson,* relied on in *Franklin,* the divided British Columbia appeals court put its stamp of approval on a bargain by which trial court would give the accomplice a pardon recommendation if he gave his evidence in an "unexceptional manner," which trial court defined as "a manner frank and fair, not necessarily that he is to give evidence against the accused, but is to tell his story freely, frankly, fully and fairly, *as I judge it.*" 70 D.L.R. at 758. (Emphasis supplied.)

The cases are legion which recognize that the State may withhold its *quid* until the accomplice produces his or her *quo.* We have found no decision other than *Franklin* which intimates this is so coercive as to render the accomplice's testimony inadmissible. *See, e. g., Gordon v. United States,* 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953) (accomplice had pleaded guilty but when testifying nine months later was still unsentenced); *United States v. Brill,* 350 F.2d 171, 174 (2d Cir. 1965) (defendant told he would not be indicted if he testified at trial "for the Government"); *McDonald v. State,* 249 Ark. at 507, 459 S.W.2d at 807

(prosecution "would make it easy" on accomplice "if she testified for the prosecution"). The conditional nature of the prosecution's promise is underlined in a case defendant relies on, *Green,* 102 Cal.App.2d at 838, 228 P.2d at 871:

It is a practice which seems to be approved in all jurisdictions, if the ends of justice will be thereby served, to extend immunity to one jointly charged with crime, *upon condition* that he testify fully and fairly as to his knowledge of the facts out of which the charge arose.

(Emphasis supplied.) Implicit, but ordinarily unspoken in such bargains (except in *Rex v. Robinson*), is the requirement that someone subsequently will examine the accomplice's testimony to determine whether the condition has been met—whether he or she has in fact testified "fully and fairly."

Against this backdrop we shift our focus to the remarks made by the trial judge in the Kindred and Morrison sentencing hearings. The court was under entreaty by their counsel to adopt a plea bargain which involved probation and deferred sentence. Kindred and Morrison initially had implicated defendant, a much-experienced felon with whom they had been consorting. After entry of an immunity order which in retrospect must have appeared premature to the State, they (if their subsequent testimony is to be believed) conceived the scheme to protect their mentor, and, without advice from their own counsel, exonerated him in depositions taken in the office of this defendant's counsel.

We think trial court in sentencing had a right to consider the possibility Kindred and Morrison were not making a clear break with the past and were lying under oath. In retrospect some of the misgivings the court articulated were unfortunate, and we do not condone them. On the other hand, we are not persuaded the statements made were so coercive that the subsequent testimony of these accomplices was inadmissible. Upon voir dire and cross-examination this defendant's counsel developed for the jury all the facts in the light most favorable to defendant. That the accom-

plices had spun several inconsistent prior versions of defendant's participation did not contaminate their testimony, but went to the weight, if any, to be given it. *See Gordon,* 344 U.S. at 416, 73 S.Ct. at 371, 97 L.Ed. at 452; *People v. West,* 54 Ill.App.3d at 908, 370 N.E.2d at 269, 12 Ill.Dec. at 646.

The *Gordon* facts are similar to those before us here. In that case the sentencing court told the accomplice, who had made "three or four statements" which did not implicate the principals:

Very well, the plea of guilty is accepted. Now, I am going to refer your case to the Probation Department for presentence report. I think I should say to you, as I said to your lawyer yesterday . . . that if you intended to plead guilty and expected a recommendation for a lenient sentence or for probation from the Probation Department, that it would be essential that you satisfy the Probation Department that you have given the law enforcement authorities all the information concerning the merchandise involved in this proceeding. . . . I am not holding out any promises to you, but I think you would be well advised to tell the probation authorities the whole story even though it might involve others.

344 U.S. at 417, 73 S.Ct. at 372, 97 L.Ed. at 452. A week later the accomplice made a "final" statement implicating the principals. When he testified against them he was still unsentenced although nine months had elapsed since his guilty plea. The convictions were reversed because, *inter alia,* trial court would not allow into evidence a transcript of the above guilty plea proceeding. But in so holding, the United States Supreme Court clearly indicated that the motivating force, if any, of the judge's remarks on the accomplice was for the jury:

The transcript would have shown the jury that a federal judge, who still retained the power to fix his sentence . . . had urged him to tell all he knew, "even though it might involve others." Involvement of others, whom Marshall [the accomplice] had not theretofore mentioned, soon followed. We think the jury

should have heard this warning of the judge, which was an addition to the matter brought out on cross-examination. The question for them is not what the judge intended by the admonition, nor how we, or even they, construe its meaning. We imply no criticism of it, and he expressly stated that he was holding out no promise. But the question for the jury is what effect they think these words had on the mind and conduct of the prisoner whose plea of guilty put him in large measure in the hands of the speaker. They might have regarded it as an incentive to involve others, and to supply a motive for [accomplice's] testimony other than a duty to recount the facts as best he could remember them. 344 U.S. at 422, 73 S.Ct. at 374, 97 L.Ed. at 455.

In the case before us Kindred and Morrison had been sentenced before they testified. The only relevant condition on Kindred's probation was that he testify "fully about your knowledge of all of the facts . . . and that you do so truthfully." We are unwilling under the facts of this case to attribute to the sentencing court the implementation of a "deal" to have Kindred and Morrison testify to something other than the truth. *See* 23 C.J.S. *Criminal Law* § 805 (1961) ("An accomplice is not rendered incompetent as a witness by the mere fact that he has been promised immunity from prosecution, . . . favorable treatment, or . . . leniency . . . where there is no deal for him to testify to anything but the truth."). Neither do the circumstances disclosed by this record persuade us that the attorney for Kindred and Morrison participated in what the cases refer to as a "corrupt bargain." *See Lisenba v. California,* 314 U.S. 219, 227, 62 S.Ct. 280, 285, 86 L.Ed. 166, 175 (1941).

▮ As a matter of public policy we believe no unnecessary barriers should be imposed on the State's option to bargain with accomplices for their truthful testimony. Of course the inherent problem of reliability of such witnesses is recognized and partially absolved by our rule requiring corroboration. § 782.5, The Code 1977; Iowa R.Crim.P. 20(3). If the concept of negotiating agreements with admitted criminals is repulsive, so is the actuality of unpunished murder, rape, and other crimes:

> From the earliest times, it has been found necessary for the detection and punishment of crime, for the state to resort to the criminals themselves for testimony with which to convict their confederates in crime . . . . Therefore, on the ground of public policy, it has been uniformly held that a state may contract with a criminal for his exemption from prosecution if he shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted or not.

*Ingram v. Prescott,* 111 Fla. 320, 321–22, 149 So. 369, 369 (1933). On more than one occasion we have expressed our confidence in our adversary process and the tool of cross-examination to expose fraud to the jury. *Keasling v. Thompson,* 217 N.W.2d 687, 705 (Iowa 1974). We now hold that except where no reasonable person could avoid finding a corrupt bargain has been struck, the accomplice's testimony should be weighed by the jury following liberal cross-examination to expose all factors which might influence the witness.

▮ Noteworthy also in this case is the strong evidence linking defendant to the break-ins, corroborating Kindred and Morrison's testimony. We find this defendant was accorded a fair trial. District court committed no error in permitting the jury to pass on the weight of the testimony of these witnesses.

AFFIRMED.