**STATE of Iowa, Appellee,**

v.

**Dannie Ray McGONIGLE, Appellant.**

No. 85–1527.

Supreme Court of Iowa.

Feb. 18, 1987.

Mark R. Lawson of Peckosh & Lawson, Maquoketa, for appellant.

Thomas J. Miller, Atty. Gen., Ann DiDonato, Asst. Atty. Gen., and Michael Kane, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

A jury found Dannie Ray McGonigle guilty of second-degree burglary in violation of Iowa Code section 713.5 (1985). Trial court entered judgment sentencing him to a prison term of not more than ten years. Finding no merit in the grounds he relies on for reversal, we affirm.

There is substantial evidence in the record from which the jury could have found the following facts. March 20, 1985, McGonigle, without permission, entered the rural Jackson County home of Brian Roe. He stole a portable television set and a bowl containing approximately twenty dollars in change. McGonigle's girl friend, Carla Michel, accompanied him to Roe's home.

After the burglary, McGonigle and Michel went to the home of Cheryl Bell, Michel's sister. They left the stolen tele-vision set with Bell and later exchanged the coins for currency at a bank.

March 27, 1986, Jackson County deputy sheriff James Streets, who was investigating the burglary, seized the stolen television set from Bell's home. McGonigle subsequently was arrested, charged, and convicted of second-degree burglary.

On appeal, McGonigle raises three issues. First, he claims trial court erred in admitting the testimony of Cheryl Bell and Carla Michel. Second, McGonigle asserts trial court abused its discretion in refusing to grant a motion for mistrial made during trial. Finally, he alleges trial court failed to articulate adequately the reasons underlying the sentence imposed, thus violating Iowa Rule of Criminal Procedure 22(3)(d).

I. Michel and Bell were key prosecution witnesses. Before trial, McGonigle moved to suppress their testimony, asserting it had been obtained only after the State had subjected them to intimidating and coercive threats of prosecution, followed by promises of immunity. McGonigle argued such tactics so tainted Michel's and Bell's testimony it must be suppressed due to its now inherently unreliable nature. Trial court rejected this motion.

■ In this appeal, McGonigle asserts trial court's failure to suppress the challenged testimony denied him a fair trial and as a result violated his constitutional right to due process of law. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. Passing a potentially fatal preservation question, we agree that to the extent the admission of the challenged testimony implicated his constitutional rights McGonigle has standing to challenge trial court's action. Further, because he claims a violation of his constitutional rights, we review his claim de novo and on the record as a whole. *State v. Vincik*, 398 N.W.2d 788, 789 (Iowa 1987); *State v. Baldwin*, 396 N.W.2d 192, 193 (Iowa 1986); *Rushing v. State*, 382 N.W.2d 141, 143 (Iowa 1986).

With respect to this asserted error, the record before us discloses the following events. When Officer Streets went to Bell's home, on March 27, 1985, he was acting on a confidential tip that McGonigle

and Michel had stolen a television set and left it there. Although they acknowledged having a set, Michel and Bell told Streets they had borrowed it from a friend in Oxford Junction.

Believing it likely had been stolen, Streets confiscated the television set, then attempted to verify the women's stories. The friend in Oxford Junction denied ever loaning a television set to the women. Further, Brian Roe positively identified the television set confiscated by Officer Streets as the one taken from his home.

April 1, 1985, Officer Streets returned to Bell's home and again confronted the women. He told Michel and Bell he was convinced their story was not true and explained it was likely they were guilty of possessing stolen property. The women's stories remained unchanged.

Streets then told the women he was going to get warrants for their arrest based on possession of stolen property. He also mentioned to Bell, who had two children and who had asked how her arrest might affect them, that it was easier to get a baby-sitter for the couple of hours it would take to give a statement than it would be to get one for the eighteen months or so she might have to serve if convicted on a charge of possessing stolen property.

Later that same day Streets again returned to Bell's home with arrest warrants for her and Michel. He told the women he was after McGonigle and all he wanted to get from them was the truth about the television set. Streets then read the women their *Miranda* rights and explained he could either arrest them or they could come to the sheriff's office on their own.

At that point, the women, apparently deciding discretion was the better part of valor, went to the sheriff's office and were interviewed. Both implicated McGonigle in the theft of the television set. After giving statements, the women were released. They were never arrested. The county prosecutor agreed to drop all charges against them, apparently including any charges relating to Michel's role in the burglary. These women later testified against McGonigle at trial.

McGonigle contends the actions of Officer Streets (and by implication the county prosecutor) were so overbearing, intimidating, and suggestive the testimony of Michel and Bell was rendered inherently untrustworthy and should have been suppressed. In McGonigle's view, trial court's failure to do so necessarily prejudiced his right to a fair trial and thus effectively denied him due process of law. We disagree.

At the threshold we note McGonigle makes no claim he was coerced or pressured by Officer Streets or the county prosecutor. McGonigle did not testify at trial and no statement made by him was admitted into evidence. Thus, we are not confronted with the question whether any statement of McGonigle properly was admissible or was obtained involuntarily and through use of coercion. *See Colorado v. Connelly*, —— U.S. ——, ——–——, 107 S.Ct. 515, 519–25, 93 L.Ed.2d 473, 481–87 (1986); *Vincik*, 398 N.W.2d at 790.

■ At work in this case are two potentially conflicting interests. On the one hand, the State, in exercising its broad prosecutorial discretion and in attempting to prove the crime charged, has the right to bargain for truthful testimony in exchange for immunity, lenience, or prosecutorial abstinence. *State v. DeWitt*, 286 N.W.2d 379, 383–86 (Iowa 1979), *cert. denied*, 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980); *see State v. Brown*, 397 N.W.2d 689, 692 (Iowa 1986). In most instances, the existence of some type of bargain does not affect the admissibility or competency of a witness's testimony. Rather, its presence goes to the credibility and weight to be given that testimony. *DeWitt*, 286 N.W.2d at 383–85. Generally, only if the State bargains for false or specific testimony, or for a specific result, is the testimony tainted and inadmissible. *Id.* at 384.

On the other hand, an inherent part of many attempts by the State to bargain for truthful testimony is the possibility a refusal to cooperate may result in the potential witness's own prosecution. This raises the concern tactics employed by the State to obtain testimony may at times become so

overreaching, intimidating, or coercive the testimony eventually obtained is inherently unreliable and must be excluded. We uniformly condemn such tactics. *See State v. Ruble*, 372 N.W.2d 216, 219 (Iowa 1985); *State v. Epps*, 316 N.W.2d 691, 695 (Iowa 1982); *State v. Ivy*, 300 N.W.2d 310, 314 (Iowa 1981).

■ However, evidence an agreement to testify was motivated in part from fear of prosecution does not mandate exclusion of the testimony as inherently suspect or require reversal of a conviction. After all, regardless of the egregiousness of the State's actions, only to the extent defendant's defense is somehow prejudiced by those actions is he or she harmed. To the extent the State's actions violate the witness's statutory or constitutional rights, the witness is free to seek redress through any available avenue.

In most instances, any potential for prejudice to a defendant's case will be avoided by allowing the witness to testify subject to searching cross-examination intended to develop fully any evidence of bias or motive on the part of the witness, or improper conduct on the part of the State. Every fact that might in some way influence the truthfulness and credibility of the witness's testimony should be laid before the jury. *See DeWitt*, 286 N.W.2d at 386. This ensures no unnecessary barriers will be imposed on the State's ability to bargain for truthful testimony, and at the same time ensures the jury will be able to determine what weight, if any, in light of all the evidence, to give the witness's testimony.

■ Only when no reasonable person could conclude other than that the testimony was inherently untrustworthy and was elicited as part of a corrupt or coercively induced bargain should trial court exclude the witness's testimony. *See id.* If reasonable minds could differ with respect to the truthfulness and credibility of the testimony, the testimony should be admitted and weighed by the jury following liberal cross-examination intended to reveal all factors that might influence the witness. *Id.*

We note in passing the present controversy is distinguishable from *State v. Ivy.* In *Ivy* a witness who already had testified was threatened with criminal prosecution if, on recall, he failed to tell the "truth" as the prosecutor believed it to be. *Ivy*, 300 N.W.2d at 313, 314. Unlike the present case, this action by the prosecutor tainted the witness's testimony, apparently rendering it inadmissible. Even in *Ivy*, however, admission of the tainted testimony was held not to be reversible error because no prejudice was shown, and thus defendant's judgment of conviction was affirmed. *Id.* at 314.

■ Examining the record before us, we conclude trial court committed no error in admitting the testimony of Michel and Bell. There is no evidence Officer Streets or the county prosecutor attempted to elicit other than truthful testimony from the women. At trial both women acknowledged their initial claim that the television set had been borrowed was false and asserted their subsequent testimony implicating McGonigle in the television theft was the truth. Other evidence supported the testimony of both Michel and Bell, and neither before trial court nor on appeal has McGonigle suggested the women's testimony was not true.

Clearly, Officer Streets put pressure on the women to change their stories. We cannot fully condone all of Streets' actions, for example, his statement in reference to Bell's children. However, he never told the women what to say, suggested they testify falsely, or told them what he considered the actual truth to be. *See id.* at 313. Even to the extent Streets indicated he suspected McGonigle was responsible for the burglary, reasonable minds could disagree whether his suggestion rendered the two women's testimony inherently untrustworthy. We conclude trial court properly admitted it for consideration by the jury.

II. During McGonigle's cross-examination of Officer Streets, the following exchange took place:

Q. Did the pressure that you put on [Cheryl Bell and Carla Michel], as you put it, have any effect on their minds, as

far as you could tell? A. Not that I could tell, no.

Q. You don't think that's what caused them to change their story, then? A. No. *I think they changed their story because that is the absolute true story.*

Q. I see. Now, what exactly was the reason that you didn't arrest them? I mean, you had arrest warrants. A. Well, number one, Cheryl Bell wasn't guilty of any crime as long as she didn't withhold information on me, because she readily gave me the TV.

Q. How about Carla Michel? A. *Carla Michel was probably as guilty of burglary as Dannie Ray McGonigle.*

(Emphasis added.) McGonigle neither objected to nor sought to strike any of this testimony.

Shortly thereafter, during the State's redirect examination of Officer Streets, State's attorney Kane had the following exchange with Streets and defense attorney Machowski:

Q. (By Mr. Kane) Do you comprehend or understand the use of discretion as you described it to be within your legitimate duties as a law enforcement official?

MR. MACHOWSKI: I am going to object to that—well, no, I will withdraw it, that's fine.

A. Yes, I do.

Q. (By Mr. Kane) Yes, you do? A. Yes.

Q. Thank you.

MR. MACHOWSKI: Nothing further.

MR. KANE: I'm not done. *I said thank you because I appreciated that answer so much and because we got it in in spite of all this hassle.*

(Emphasis added.) Again no objection or motion to strike was asserted by McGonigle.

After Officer Streets completed his testimony, a recess was taken. During this recess, McGonigle moved for a mistrial. He grounded his motion on Streets' statement that Bell and Michel changed their story because it was the truth and his statement that McGonigle was guilty of the burglary. He also relied on the statement by the State concerning the "hassle" in getting a piece of testimony into evidence.

On appeal, McGonigle asserts trial court's failure to grant a mistrial was an abuse of discretion. *See State v. Brown,* 397 N.W.2d 689, 698 (Iowa 1986). This contention is without merit.

■ Only after Officer Streets was entirely done testifying was any objection or motion for mistrial raised. Assuming McGonigle had not already waived any right to challenge these statements, *see State v. Washington,* 356 N.W.2d 192, 194 (Iowa 1984); *State v. Gibb,* 303 N.W.2d 673, 678 (Iowa 1981), we are unwilling to find trial court abused its discretion when it denied McGonigle's motion for mistrial.

Trial court admonished the State to refrain from further comments. On McGonigle's request, the court instructed the jury to ignore Streets' two statements. There is no indication trial court's actions failed to remove any potential prejudice to McGonigle's defense. *See State v. Williams,* 315 N.W.2d 45, 55–56 (Iowa 1982). There also is no evidence the prosecutor's improper comment prejudiced McGonigle's defense. *See State v. Bishop,* 387 N.W.2d 554, 561 (Iowa 1986). We find no error in trial court's refusal to grant the mistrial motion.

■ III. Finally, McGonigle asserts trial court failed to articulate on the record its reasons for imposing a sentence of not more than ten years. An articulation of the reasons for imposing a particular sentence is required by Iowa Rule of Criminal Procedure 22(3)(d). Failure to articulate sufficiently the reasons for imposing a particular sentence prevents us from reviewing the propriety of the sentence imposed and requires us to vacate the sentence and remand for resentencing. *State v. Luedtke,* 279 N.W.2d 7, 8 (Iowa 1979); *see also State v. Washington,* 356 N.W.2d 192, 196 (Iowa 1984).

■ We have examined the record thoroughly and conclude trial court articulated with sufficient clarity its reasons for imposing the particular sentence selected.

Finding no error, we affirm McGonigle's conviction.

AFFIRMED.