No. 77–447.  RATCHFORD, PRESIDENT, UNIVERSITY OF MISSOURI, ET AL. *v.* GAY LIB ET AL.  C. A. 8th Cir.  Certiorari denied.  THE CHIEF JUSTICE would grant petition and give plenary consideration to this case.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE BLACKMUN joins, dissenting.

There is a natural tendency on the part of any conscientious court to avoid embroiling itself in a controversial area of social policy unless absolutely required to do so.  I therefore completely understand, if I do not agree with, the Court's decision to deny certiorari in this case.  In quick summary, the University of Missouri, exercising the traditional authority granted to it by the State to regulate what student organizations will have access to campus facilities, denied recognition to respondent Gay Lib.  The denial stemmed from a finding by a University-appointed hearing officer that formal University

recognition would "tend to expand homosexual behavior which will cause increased violations of [the State's sodomy statute]." Respondents, choosing to remove the dispute from its traditional University setting to the federal courts, sued in the United States District Court for the Western District of Missouri, claiming that the denial infringed their constitutional rights to free speech and freedom of association. The District Court held that the University had not violated respondents' constitutional rights. *Gay Lib* v. *University of Missouri,* 416 F. Supp. 1350 (1976). Respondents, continuing to pursue a judicial solution to their problem, persuaded two judges of a three-judge panel of the Court of Appeals for the Eighth Circuit to reverse the District Court. 558 F. 2d 848 (1977). A petition for rehearing en banc was denied by an equally divided court. The University now seeks certiorari here to review that decision.

Courts by nature are passive institutions and may decide only those issues raised by litigants in lawsuits before them. The obverse side of that passivity is the requirement that they *do* dispose of those lawsuits that are before them and entitled to attention. The District Court and the Court of Appeals were doubtless as chary as we are of being thrust into the middle of this controversy but were nonetheless obligated to decide the case. Unlike the District Court and the Court of Appeals, Congress has accorded to us through the Judiciary Act of 1925, 28 U. S. C. § 1254, the discretion to decline to hear a case such as this on the merits without explaining our reasons for doing so. But the existence of such discretion does not imply that it should be used as a sort of judicial storm cellar to which we may flee to escape from controversial or sensitive cases. Our Rules provide that one of the considerations governing review on certiorari is whether a Court of Appeals "has decided an important question of federal law which has not been, but should be, settled by this court; or has decided a federal question in a way in conflict with appli-

cable decisions of this court." Rule 19 (1)(b). In my opinion the panel decision of the Court of Appeals meets both of these tests, and I would therefore grant certiorari and hear the case on the merits.

The sharp split amongst the judges who considered this case below demonstrates that our past precedents do not conclusively address the issues central to this dispute. In the same manner that we expect considered and deliberate treatment of cases by these courts, we have a concomitant responsibility to aid them where confusion or uncertainty in the law prevails. By refusing to grant certiorari in this case, we ignore our function and responsibility in the framework of the federal court system and place added burdens on other courts in that system.

Writ large, the issue posed in this case is the extent to which a self-governing democracy, having made certain acts criminal, may prevent or discourage individuals from engaging in speech or conduct which encourages others to violate those laws. The Court of Appeals holds that a state university violates the First and Fourteenth Amendments when it refuses to recognize an organization whose activities both a University factfinder and the District Court found were likely to incite violations of an admittedly valid criminal statute. Neither the Court of Appeals nor respondents contend that the testimony of the expert psychologists at these hearings was insufficient to support such a finding. They appear to take instead the position that such a finding is not governed by the normal "clearly erroneous" test established in Fed. Rule Civ. Proc. 52 (a). This unusual conclusion, in itself, would seem to me to be sufficient to warrant a grant of certiorari.

But lurking behind this procedural question is one which surely goes to the heart of the inevitable clash between the authority of a State to prevent the subversion of the lawful rules of conduct which it has enacted pursuant to its police power and the right of individuals under the First and Four-

teenth Amendments who disagree with various of those rules to urge that they be changed through democratic processes. The University in this case did not ban the discussion in the classroom, or out of it, of the wisdom of repealing sodomy statutes. The State did not proscribe membership in organizations devoted to advancing "gay liberation." The University merely refused to recognize an organization whose activities were found to be likely to incite a violation of a valid state criminal statute. While respondents disavow any intent to advocate present violations of state law, the organization intends to engage in far more than political discussion. Among respondent Gay Lib's asserted purposes are the following:

> "3. Gay Lib wants to provide information to the vast majority of those who really don't know what homosexuality or bi-sexual behavior really is. Too much of the same prejudice is now directed at gay people just as it is directed at ethnic minorities.
>
> "4. Gay lib does not seek to proselytize, convert, or recruit. On the other hand, people who have already established a pattern of homosexuality when they enter college must adjust to this fact.
>
> "5. Gay Lib hopes to help the gay community to rid itself of its subconscious burden of guilt. Society imprints this self-image on homosexuals and makes adjustment with the straight world more difficult."

Expert psychological testimony below established the fact that the meeting together of individuals who consider themselves homosexual in an officially recognized university organization can have a distinctly different effect from the mere advocacy of repeal of the State's sodomy statute. As the University has recognized, this danger may be particularly acute in the university setting where many students are still coping with the sexual problems which accompany late adolescence and early adulthood.

The University's view of respondents' activities and respondents' own view of them are diametrically opposed. From the point of view of the latter, the question is little different from whether university recognition of a college Democratic club in fairness also requires recognition of a college Republican club. From the point of view of the University, however, the question is more akin to whether those suffering from measles have a constitutional right, in violation of quarantine regulations, to associate together and with others who do not presently have measles, in order to urge repeal of a state law providing that measle sufferers be quarantined. The very act of assemblage under these circumstances undercuts a significant interest of the State which a plea for the repeal of the law would nowise do. Where between these two polar characterizations of the issue the truth lies is not as important as whether a federal appellate court is free to reject the University's characterization, particularly when it is supported by the findings of the District Court.

As the split among the lower court judges shows, *Healy* v. *James,* 408 U. S. 169 (1972), did not directly address these questions. There we remanded the decision of the Court of Appeals of the Second Circuit to decide whether the University's refusal to recognize a local branch of the Students for a Democratic Society was motivated by a factual conclusion that the organization would not abide by reasonable campus regulations of the sort held valid in *Esteban* v. *Central Missouri State College,* 415 F. 2d 1077, 1089 (CA8 1969) (Blackmun, J.). Here the question is not whether Gay Lib as an organization will abide by university regulations. Nor is it really whether Gay Lib will persuasively advocate violations of the sodomy statute. Instead, the question is whether a university can deny recognition to an organization the activities of which expert psychologists testify will in and of themselves lead directly to violations of a concededly valid state criminal law.

As our cases establish from *Schenck* v. *United States,* 249 U. S. 47 (1919), in which Mr. Justice Holmes, speaking for a unanimous Court, held that the Government has a right to criminally punish words which are "used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent," to *Brandenburg* v. *Ohio,* 395 U. S. 444 (1969), some speech that has a propensity to induce action prohibited by the criminal laws may itself be prohibited. *A fortiori,* speech and conduct combined which have that effect may surely be placed off limits of a university campus without doing violence to the First or Fourteenth Amendments.

*Healy* was decided by the lower courts in what may fairly be described as a factual vacuum. There this Court stated that a student organization need not be recognized if such recognition is likely to incite criminal violations, but did not have to consider how that standard would be applied to a particular factual situation. No attempt had been made by the University to demonstrate that imminent lawless action was likely as a result of the speech in question, nor was there any hint that any such effort was likely to have been successful. Here, such a demonstration was undertaken, and the District Court sitting as a finder of fact concluded that petitioners had made out their case. The Court of Appeals' panel opinion, for me at least, sheds no light on why this conclusion of the District Court could be rejected. By denying certiorari, we must leave university officials in complete confusion as to how, if ever, they may meet the standard that we laid out in *Healy.*

The mathematically even division of the Court of Appeals on the petition for rehearing en banc gives some indication of the divergence of judicial views which may be expected from conscientious judges on difficult constitutional questions such as this. Our views may be no less divergent, and no less persuasive to one another, than were the views of the eight judges of the Court of Appeals. But believing as I do that we

cannot under our Rules properly leave this important question of law in its present state, I would grant the petition for certiorari.