**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49876**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 20, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSINA MARIE REGAN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of conviction for first degree murder, preparing false evidence, possession of methamphetamine, conspiracy to commit possession of methamphetamine, grand theft, conspiracy to commit grand theft, possession of bath salts, conspiracy to commit possession of bath salts, and possession of drug paraphernalia, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley and Jenny C. Swinford, Deputy Appellate Public Defenders, Boise, for appellant. Sally J. Colley argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

TRIBE, Judge

Josina Marie Regan appeals from her judgment of conviction for first degree murder, preparing false evidence, possession of methamphetamine, conspiracy to commit possession of methamphetamine, grand theft, conspiracy to commit grand theft, possession of bath salts, conspiracy to commit possession of bath salts, and possession of drug paraphernalia. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Regan shot and killed John Baker, her boyfriend, in his residence. She then called Todd Potter who came to the residence, driven by a third person, and helped Regan move items in bags

1

from the residence to the car in which Potter arrived. The trio then drove to a motel where Regan rented two rooms. They placed the bags in one room and Potter stayed in the other room. Regan returned to the residence, called police, and reported that she found Baker in an unconscious state with a gunshot wound. Regan was taken to the police station where she eventually admitted to shooting Baker. On the day Regan was arrested, police searched each of the motel rooms. In the room where Regan left the bags, the police discovered $1,275 in cash, 8.89 grams of methamphetamine, 0.18 grams of bath salts, and drug paraphernalia. Regan admitted that she took the items from the residence. Regan was charged with first degree murder, preparing false evidence, possession of methamphetamine, conspiracy to commit possession of methamphetamine, grand theft, conspiracy to commit grand theft, possession of bath salts, conspiracy to commit possession of bath salts, witness intimidation, and possession of drug paraphernalia.

At trial, the State's theory was that Regan shot and killed Baker due to financial pressure. The State sought to admit into evidence Regan's phone records with call logs and text messages. Specifically, the State sought to introduce text messages to Regan from a person named "Landlord Tom" or "Tom Landlord" that were sent before the killing. The two text messages were identical and read, "When can I get rent?" Regan objected to the text messages on relevance grounds. The district court allowed, on at least two separate occasions, Regan and the State to make arguments regarding the admission of the text messages. Eventually, the district court overruled the objection and admitted the text messages.

At the conclusion of the evidence, the jury was provided instructions for each charged crime (which included the conspiracy charges[1]) without objection from either party. The jury was instructed that, for Regan to be found guilty on the conspiracy charges, the State had the burden of proving beyond a reasonable doubt that "[Regan] and/or Todd Potter and/or other unnamed or unknown persons" agreed to commit the substantive crimes. Regan was found guilty of first degree murder, Idaho Code §§ 18-4001, -4002, -4003; preparing false evidence, I.C. § 18-2602; possession of methamphetamine, I.C. § 37-2732(c); conspiracy to commit possession of

---

[1]     The State charged Regan with three counts of conspiracy for three distinct substantive crimes. For brevity, we will refer to the collective conspiracy counts as "the conspiracy charges."

methamphetamine, I.C. § 37-2732(c), I.C. § 18-1701; grand theft, I.C. §§ 18-2403(1), -2407(1)(b), -2409; conspiracy to commit grand theft, I.C. §§ 18-2403(1), -2407(1)(b), -2409, I.C. § 18-1701; possession of bath salts, I.C. §§ 37- 2732(c), -2705(f)(5); conspiracy to commit possession of bath salts, I.C. §§ 37-2732(c), -2705(f)(5), I.C. § 18-1701; and possession of drug paraphernalia, I.C. § 37-2734A. Regan appeals.

## II.

## ANALYSIS

### A.     Jury instructions

Regan argues that the district court committed fundamental error by failing to properly instruct the jury on each of the conspiracy charges. Regan did not object to these jury instructions when they were given. When the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. *State v. Skunkcap*, 157 Idaho 221, 227, 335 P.3d 561, 567 (2014); *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). Under that doctrine, there must be an error that violates one or more of the defendant's unwaived constitutional rights; the error must be clear or obvious, without the need for any additional information not contained in the appellate record that the failure to object was a tactical decision; and the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most cases) that it must have affected the outcome of the trial proceedings. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). The defendant has the burden of persuasion on these elements. *Id.*

The first inquiry is whether there was an error in the jury instructions. *Skunkcap*, 157 Idaho at 227, 335 P.3d at 567. Regan argues that the jury instructions related to each of the conspiracy charges were improper and failed to instruct the jury on the State's burden to prove every element of the crime of conspiracy. Regan argues that she was deprived of a fair trial in violation of her due process rights under the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution. In criminal trials, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007). Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the

3

instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). Whether the instruction was erroneous will depend upon how a reasonable juror would have interpreted the instruction. *Skunkcap*, 157 Idaho at 227-28, 335 P.3d at 567-68.

Conspiracy is defined as when "two (2) or more persons combine or conspire to commit any crime or offense . . . and one (1) or more of such persons does any act to effect the object of the combination or conspiracy." I.C. § 18-1701. The State has the burden of proving there is an agreement between two or more individuals to accomplish an illegal objective, coupled with one or more overt acts in the furtherance of the illegal purpose accompanied by the requisite intent to commit the underlying substantive offense. *State v. Smith*, 161 Idaho 782, 787, 391 P.3d 1252, 1257 (2017); *State v. Garcia*, 102 Idaho 378, 384, 630 P.2d 665, 671 (1981).

Regan argues jury instructions 36, 43, and 49 misled the jury by stating in paragraph 3 of each conspiracy instruction that the State had the burden to prove that "the defendant Josina Regan, AKA Josina Marie Regan, AKA Josina M. Brooks, AKA Josina Regan Adams *and/or* Todd Potter *and/or* other unnamed or unknown persons agreed" to commit the three substantive crimes. (Emphasis added). Specifically, Regan argues that "the use of 'and/or' as opposed to 'and' after [Regan's] name allowed the jury to exclude [her] from the agreement." In essence, Regan argues that the jury instructions allowed the jury to find her guilty of conspiracy even if it were to find that Todd Potter, acting alone, or acting in conjunction with some third party, entered into agreements without Regan.

While the challenged jury instructions deviate from the pattern instruction, Regan has failed to meet her burden on all three prongs of the fundamental error doctrine.[2] The jury instruction "may not be judged in artificial isolation" but will be considered in the context of instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Reading jury instructions 36, 43, and 49 in their entirety, rather than reading paragraph 3 in isolation, would lead a reasonable juror to conclude that Regan's agreement was essential for the elements of the conspiracy charges to be met. Each conspiracy instruction includes a paragraph that tells the jury

---

[2] Idaho Criminal Jury Instruction 1101 does not include the "and/or" language but, rather, states that "the defendant [name] and [name(s)] [and] [another unknown person] [other unknown persons] agreed."

that the State must prove that Regan "intended that the crime would be committed." Moreover, each of the conspiracy instructions are followed by more clarifying instructions. Jury instructions 38, 45, and 50 explain that the State alleged Regan "was a party to an agreement to commit" the three substantive crimes.

Regan argues that paragraph 6 of each of the conspiracy jury instructions also did not remedy the error created by the "and/or" in paragraph 3 of each of the conspiracy jury instructions. Regan concludes that, because the instruction on overt acts requires the jury to only find that "one of the parties to the agreement performed at least one of the following acts . . . the jury could have found Todd Potter alone performed any one of the three alleged acts to find [Regan] guilty." Regan's emphasis on paragraph 6 of each of the conspiracy instructions could be read to mislead the jury if they were read in isolation. However, when read in context of the totality of the jury instruction, paragraph 6 does not contribute to or create any confusion.

Paragraph 6 of each of the conspiracy instructions reads:

> 6. one of the parties to the agreement performed at least one of the following acts:
> > a. On or about October 22, 2020, Josina Regan and/or Todd Potter removed [methamphetamine] [cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] from John Baker's residence.
> > b. On or about October 22, 2020, Josina Regan and/or Todd Potter transported [methamphetamine] [the cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] to a Motel 6 in Meridian, Idaho.
> > c. On or about October 22, 2020, Todd Potter watched over the [methamphetamine] [cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] at the Motel 6 in Meridian, Idaho.

Even if the jury found that Regan did not commit any of the acts mentioned above, this does not affect the jury's ability to believe that Regan conspired to carry out any of the overt acts. Regan fails to argue a connection between the jury's potential to believe that Potter carrying out the specific acts alone has any bearing on whether she entered into an agreement with Potter. Moreover, paragraph 6 draws from the conspiracy statute's element that "one (1) or more of such persons does any act" in furtherance of the conspiracy. Therefore, paragraph 6 of the instruction

5

correctly states the law as it pertains to the furtherance of the conspiracy and contributes no incorrect information or instruction concerning the agreement element of conspiracy.

Therefore, the State was not relieved of its burden to prove any element of conspiracy beyond a reasonable doubt and there is no error in the jury instructions when read in totality. Because we conclude that the jury instructions did not violate Regan's constitutional right to due process, we need not address the remaining elements of the fundamental error analysis.

**B.      Phone Records**

Regan challenges the admission of missed calls and text messages from someone in her phone named "Landlord Tom" or "Tom Landlord." Regan argues that the calls and text messages were irrelevant and hearsay. The State argues that the calls and texts were relevant to show Regan's motive and that her argument is unpreserved. The State further argues that, if the hearsay argument is preserved, the text messages and missed calls were not hearsay because they were not offered for the truth of the matter asserted.

**1.      Relevance**

The State asserts that the messages and calls from Landlord Tom were presented to show that Regan had a financial motive for the charged crimes, which included murdering Baker and taking his drugs and money. Evidence that is relevant to a material issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Idaho Rule of Evidence 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. There is no requirement that evidence be relevant only to a disputed issue under I.R.E. 401, only that evidence be probative and material. *Id.* at 671, 462 P.3d at 1135. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

The texts from Landlord Tom asking, "When can I get rent?" were sent to Regan one day before Baker was killed. Portions of State's exhibit 327 indicate the texts from Landlord Tom occurred on October 21, approximately one hour apart. The three unanswered phone calls occurred on October 20 and 21. The State presented a theory in opening argument that the crimes were motivated by money and drugs. The inclusion of a text message from any person asking for "rent"

6

has a tendency to make the State's theory that the killing was motivated by financial pressure more probable. Regan argues that, because she testified at trial the rent was not due, this text message is irrelevant. However, that Regan rebutted the evidence does not make the evidence irrelevant. Moreover, the State's theory regarding motive does not require the State to prove that rent was actually due. It is enough that someone was repeatedly asking Regan for rent money. The request for rent money two days before and the day before the killing has a tendency to show that Regan had financial pressure on her around the time of the crimes. The missed calls and text messages inquiring about rent had the tendency to make the State's theory of motive more probable, and as a result, the district court did not err in admitting the evidence.

### 2.     Hearsay

As a preliminary matter we will address the State's argument that Regan's hearsay argument is not preserved. The State argues that Regan did not preserve the issue for appeal because she did not assert a hearsay objection at trial. Regan contends that her hearsay argument is preserved because the context of the objection clearly references hearsay. Regan asserts that, although trial counsel said, "we would object on relevance grounds," there is enough context in the discussion with the district court and the State to make hearsay the apparent basis of the objection. Generally, Idaho's appellate courts will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial. For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated or the basis of the objection must be apparent from the context. *Hansen v. Roberts*, 154 Idaho 469, 476, 299 P.3d 781, 788 (2013). However, when the objection is explicitly stated, we need not use context to make an inference on what the basis of the objection was. The basis of the objection was explicitly stated as "relevance," while the term "hearsay" is never mentioned in reference to the objection to the Landlord Tom text messages by trial counsel, the district court, or the prosecutor.

At oral argument, counsel for Regan repeatedly asked this Court to infer that when the district court used the term "context" in ruling on objections to the Landlord Tom text messages, that term was a response to an unarticulated hearsay objection. Specifically, counsel argued that the district court's use of the term "context" in various parts of the transcript is representative of the conversation referring to hearsay. However, counsel for Regan failed to explain how the

7

district court's use of the word "context" meant it was ruling on an unarticulated hearsay objection as opposed to the relevance objection that was actually made.

Regan also argues that, because Landlord Tom did not testify during trial, the texts are out-of-court statements. Regan asserts that, because the State and district court reference providing context for the text messages, this makes the basis of her objection at trial apparent as hearsay. In further support of her argument, Regan cites to various places in the transcript where hearsay is discussed. However, these citations to the transcript do not refer to the text messages from Landlord Tom but, instead, reference text messages from other people regarding drug sales. Also, the citations to the transcript reference the admission of the phone record as a whole, not the specific text messages from Landlord Tom that Regan claims were admitted in error. Regan fails to cite to the portion of the transcript where these specific text messages from Landlord Tom were characterized as hearsay.

Moreover, Regan's citations to the transcript in her reply brief are misleading. In Regan's reply brief she makes many references to the trial transcript, which she claims support her assertion that the district court admitted the Landlord Tom communications based on hearsay. However, upon closer review of the transcript, many of the references are not to the district court's decision regarding the Landlord Tom communications but are to other communications within State's exhibit 327 or other exhibits entirely.

For example, comments regarding Landlord Tom's text messages begin on page 1613 of the transcript. On page 1620, while it is true the district court addresses hearsay and nonhearsay issues; however, the text messages being discussed are text messages from people *other than* Landlord Tom and do not address the rent issue. Instead, the text messages were offered by the State to show Regan's familiarity with drugs to rebut the claim that she did not use drugs. The text messages with Landlord Tom are not discussed again until page 1627. The Landlord Tom text messages were admitted with no mention of hearsay by any party. In contrast, on pages 1628-29, another caller, Danny Mom 2, and an unidentified phone caller are discussed by the district court. Those texts and calls were excluded based on an Idaho Rule of Evidence 403 analysis, which included a consideration of "hearsay evidence coming in."

In her reply brief, Regan's claims include:

8

The district court admitted the phone call log and substance of the text messages, concluding that the messages and log regarding Landlord Tom's communications with Ms. Regan one to two days before the murder were relevant non-hearsay because they provided context, and/or that they fit within the 'state of mind' exception to the hearsay rule. (Tr., p.1440, Ls.9–18; p.1585, Ls.19–25; p.1599, L.9 – p.1601, L.10; p.1627, Ls.7–25; p.1668, Ls.7–15; p.1671, L.7 – p.1673, L.16.).[3]

However, the reference on page 1440 is State's exhibit 307, not State's exhibit 327.[4]

---

[3]     Counsel for Regan submitted a letter of clarification following oral argument. The only substantive change the Court observes is the inclusion of *"See"* preceding the citation to the transcript pages. This citation is improper for two reasons. First, *"see"* citations are to be used to point the Court to supporting *authority*, not for adopting facts from the record or transcript. THE BLUEBOOK: A SYSTEM OF CITATION R. 1.2(a), at 62 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). ("Cited authority clearly supports the proposition . . . . there is an inferential step between the authority cited and the proposition it supports."). Second, even if it were proper, the cited portions of the transcript do not provide an inferential step to support Regan's statement that "the district court admitted the call log and substance of the text messages concluding that the messages and log regarding Landlord Tom. . . were relevant non-hearsay." Regan's position at oral argument that the citations were to point the Court to general statements by the district court discussing context is contrary to the substantive argument made in the portion of the reply brief preceding the citation. Rather, the *"see"* citation suggests to this Court that the cited portion of the transcript provides inferential support to the statement preceding it. Even if the clarification was proper, it does not ameliorate what appears to be, at best, careless citations to the transcript.

[4]     Beginning on page 1437 of the transcript, the district court asks, "So now do you want to go to no. 307?" Regan objects to the introduction of this evidence on the grounds of improper character evidence, cumulative, confrontation, and relevance. In further discussion of exhibit 307, the State asserts "the relevance of this message is that it shows that she essentially shorted somebody $130 that is owed." The only mention of Landlord Tom in the cited portion of the transcript is when the State argues:

> And so, again and again and again, in the interview with Detective Roath, she's like, "I don't owe anybody any money." And so this is showing that there's-- the interaction that she had with this person and the date of this is October 21st. This is offered to show her state of mind is she owed a lot of people money.
>
> So she's not only having financial hardships with Mr. Baker; there's also this person right here. When you look at the timeline, there's also the--on the day before and the day of, that her landlord--there's somebody identified in her contact list as the landlord, that she owed that person money, as well.
>
> So this is being offered to show that this is somebody else in this same industry that she is in financial hardships with. And so to be able to get the money and the drugs from Mr. Baker helps solve that problem. It goes to motive.

The district court states:

9

To determine what the reference at page 1440 is indicating, the Court was required to begin back on page 1437, when the district court specifically says, "now do you want to go to no. 307?" The reference to page 1585 is the district court discussing State's exhibit 324, which discussion begins on page 1584. Reading the both before and after portions of the transcript cited by Regan shows an explicit statement from the district court that the discussion of the state-of-mind exception to the hearsay rule is in reference to a Facebook conversation with a person other than Landlord Tom. This is another example of a citation to the transcript that does not support the proposition for which it is being cited. The citation does not reference the text messages from Landlord Tom, nor does it support Regan's assertion that the district court concluded the messages from Landlord Tom were "relevant non-hearsay because they provided context, and/or that they fit within the 'state of mind' exception to the hearsay rule."

The reference on page 1668 is a reference to a case cited to the district court regarding hearsay, and the reference on page 1671 is the district court's discussion of the previously cited case. Also, the reference on page 1434 is not regarding communications from Landlord Tom but is regarding communications of drug sales.

In addition, the reference to pages 1617-19 on page 6 of Regan's reply brief refer to communications from an individual labeled Danny Mom 2, not Landlord Tom. The pages preceding this cited portion of the transcript show the conversation was related to text messages about drug sales between Regan and Danny Mom 2. The prosecutor states:

> [B]ecause it's her communicating with somebody, that would make it not hearsay in the parts where she's explaining her responses to this person. And then the message from this other person just put her responses in context, so how she's responding and she's willing to engage in this negotiation.

---

> All right. I understand your argument. I'll take that under advisement as to--that was No. 307.
> But it seems to me that in these, you're still asking the jury to accept that the statements in this text message from an unknown person, who cannot be cross-examined--you are offering them for the truth that she did owe money. And, again, that's my concern, is you say you're not offering them for the truth, but to show her state of mind. But it wouldn't show her state of mind unless you were offering that statement for the truth.

The conversation remains concerned with exhibit 307 and a demand for $130, not exhibit 327, the inquiry for rent money. The district court later declines to admit State's exhibit 307.

10

It's worth noting that these messages are occurring--well, I'll go to the last one that [Regan] says in response.

So he has $80. That will get him 2.

. . . .

What this message is showing is that [Regan] is well versed in the purchasing and selling of controlled substances . . . . these messages just help establish that.

And so that's why the State would ask that it be admitted.

When the district court asks, "So how is it admissible when the statements by an unknown party identified as maybe Danny Mom 2, in your example, how does that hearsay get in? Do you agree it's hearsay?" The prosecutor states:

[T]he messages from [Regan] are non-hearsay.
[S]o then the only question would be: Do we leave out these other messages? The reason that those statements would come in is to provide context and essentially the effect on the listener. Why is she responding the way she's doing? She's doing this as part of the communication.

Regan seems to suggest that the prosecutor's discussion regarding other text messages being admitted is a reference to the text messages from Landlord Tom. However, when read in context, it is apparent this portion of the transcript relates to admitting the portion of the conversation attributable to Danny Mom 2, not to the wholly separate text from Landlord Tom. Based on the above, it appears that Regan's counsel has, at best, been careless in citing to the transcript.[5]

Finally, Regan states that "the district court's rulings were not clear as to how the statements were being admitted." However, the district court provided this explanation in its ruling:

As to the landlord, I didn't allow the earlier statement in from earlier in October. But where these statements--attempted phone calls are the 20th and the 21st and after the instant message has been sent, I think a reasonable inference would be drawn that the landlord is trying to reach her. The landlord sends a message about rent and then, approximately three minutes later on the 21st, tries to reach out, and [Regan] doesn't answer. Again, another message on 10-21 at 12:35, approximately an hour later, 12:35 p.m., Landlord Tom, "When can I get the rent?"

---

[5]    This Court has noted with increased frequency careless or inaccurate citations to the record or authority that do not support the proposition for which they are cited. There is no advantage, and clear disadvantages, to providing inaccurate or misleading citations to the record and authority. Such a practice does not constitute zealous advocacy but, instead, damages the reputation of the attorney, which materially limits his or her ability to be an effective advocate.

So I think those phone calls are close enough in time to those two text messages that a reasonable inference can be made that she's not answering the landlord's call, and the landlord is asking about rent and keeps calling. I don't think that's too far of a stretch. So I would allow those call logs to stay in on page 12.

It is apparent that the district court admitted the text messages on the basis that they were received "close enough in time" to the phone calls from the same number and would allow the jury to make "a reasonable inference . . . that [Regan is] not answering the landlord's call, and the landlord is asking about rent and keeps calling." Therefore, the "context" referenced by the district court when it admitted the text messages concerned context for relevancy not hearsay. Because Regan has failed to meet her burden of showing that it is apparent from the record or transcript that hearsay is the basis of the objection, her hearsay argument has not been preserved as an argument on appeal.

### III.

### CONCLUSION

Regan has failed to show fundamental error in the conspiracy jury instructions. Further, any presumptive error was not fundamental and was remedied by reading the jury instructions in their totality. Additionally, Regan has failed to show that the district court erred by admitting statements from Landlord Tom based on relevancy. Finally, Regan has failed to meet her burden to prove that the basis of the objection to Landlord Tom's text messages to Regan included hearsay; therefore, that issue was not preserved for appeal. Consequently, Regan's judgment of conviction for first degree murder, preparing false evidence, possession of methamphetamine, conspiracy to commit possession of methamphetamine, grand theft, conspiracy to commit grand theft, possession of bath salts, conspiracy to commit possession of bath salts, and possession of drug paraphernalia is affirmed.

Judge HUSKEY and Judge LORELLO, **CONCUR**.

12